UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
MONA BRAYBOY,[1]                              :
as Fiduciary of the Estate of
Ronnie Brayboy,                               :

        Brayboy,                              :

              vs.                             :       No. 3:11cv1042(WIG)

CITY OF BRIDGEPORT,                           :
CAROLE PANNOZZO, and
MARIA O'DWYER,                                :

        Defendants.                           :
-------------------------------------------------X
```

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action arises out of Ronnie Brayboy's employment as a school security guard with the City of Bridgeport, Board of Education. Also named as Defendants are Carole Pannozzo, formerly the Executive Director of Human Resources for the Bridgeport Board of Education, and Maria O'Dwyer, a secretary at the school where Brayboy worked.

On March 20, 2014, Defendants moved for summary judgment on all eleven counts of the Fourth Amended Complaint [Doc. # 81]. In support of their motion, Defendants filed a Rule 56(a)1 Statement and memorandum in support, as well as supporting deposition excerpts and documents.

Rather than responding to the motion for summary judgment, Plaintiff initially filed a motion to open discovery, which was denied by the Court [Doc. # 88]. In that Order, the Court

---

[1] This action was originally filed by Ronnie Brayboy. Mr. Brayboy passed away earlier this year, and Mona Brayboy, the fiduciary of his estate, was substituted as Plaintiff. Throughout this decision, the Court has used "Brayboy" to refer to Ronnie Brayboy.

ordered Plaintiff to file a response to the motion for summary judgment no later than May 13, 2014. Plaintiff did not respond until May 16, 2014. No extension of time was sought and no excuse was offered for this untimely filing. The Court could have disregarded this response as untimely. However, the lack of a response does not entitle Defendants to summary judgment. As the Second Circuit has held, even if the non-movant fails to oppose a summary judgment motion, summary judgment may not be granted unless the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242, 244 (2d Cir. 2004); *Amaker v. Foley*, 274 F.3d 677, 680 (2d Cir. 2001); *see also* Fed. R. Civ. P. 56, advisory committee note of 2010 ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion. . . . [T]he court may grant summary judgment only if the motion and the supporting materials . . . show that the movant is entitled to it."). Because a ruling on the merits of Defendants' motion is required as to each count of Plaintiff's complaint, the Court has considered the arguments raised by Plaintiff in determining whether the undisputed facts show that Defendants are entitled to judgment as a matter of law.

However, as to the facts asserted in Plaintiff's response, Plaintiff has wholly failed to comply with the Federal Rules of Civil Procedure and the Local Rules of the District of Connecticut for asserting and contesting facts on a motion for summary judgment. *See* Rule 56(c) - (e), Fed. R. Civ. P.; D. Conn. L. Civ. R. 56(a)2 & 3. Plaintiff has not responded to the facts asserted in Defendants' Rule 56(a)1 Statement. Plaintiff has not set forth the material facts that are in dispute. And, Plaintiff has not provided any affidavits, deposition excerpts, or other admissible evidence to support the alleged facts in the responsive memorandum. Plaintiff relies

on the allegations of the unverified complaint.  The non-moving party cannot rely solely on the pleadings to create an issue of fact to overcome a summary judgment motion.  *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

"In order to defeat a motion for summary judgment that is properly supported by the evidence contemplated in Federal Rule of Civil Procedure 56(e), 'the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried.  He cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.'" *Powell v. Donahoe*, 519 F. App'x 21, 22 (2d Cir. 2013)(quoting *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)).  Rule 56(a)2 of the Local Rules of Civil Procedure requires the party opposing a motion for summary judgment to file a Rule 56(a)2 Statement, responding to the moving party's Local Rule 56(a)1 Statement with an admission or denial of each asserted fact and setting forth a list of each material fact as to which it is contended there is a genuine issue to be tried.  The Local Rule 56(a)2 Statement must contain specific citations to the affidavit of a witness competent to testify to the facts at trial or evidence that would be admissible at trial.  D. Conn. L. Civ. R. 56(a)3.  "The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule . . . 56(a)2 Statement[ ] in conformity with Fed. R. Civ. P. 56(e)."  D. Conn. L. Civ. R. 56(a)3.

When the opposing party fails to appropriately deny material facts set forth in the moving party's Local Rule 56(a)1 Statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.  *Johnson v. Connecticut Dep't of Adm. Servs.*, 972

3

F. Supp. 2d 223, 228 (D. Conn. 2013); *SEC v. Global Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004). Accordingly, for purposes of ruling on Defendants' motion for summary judgment, the Court has deemed admitted the facts set forth in the Rule 56(a)1 Statement to the extent they are supported by evidence in the record.

Summary Judgment Standard

The standard for granting summary judgment is well-settled. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *Am. Int'l Group, Inc. v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981). The substantive law governing the claims in a case will identify those facts that are material. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Additionally, in ruling on a motion for summary judgment, the Court must review all of the evidence in the record and resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court, however, may not make credibility determinations. *Id.* "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). Stated differently, "if there is any evidence in the record that could reasonably support a jury's verdict for the non-

moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## Factual Background

From 1986, Brayboy was employed as a school security officer by the City of Bridgeport Board of Education. On or about December 9, 2010, Brayboy was working at the Columbus School in Bridgeport, where Defendant O'Dwyer worked as a secretary. Exactly what transpired between Brayboy and O'Dwyer on that day is disputed. Early that morning, Brayboy was in the main office with O'Dwyer and another security officer. He claims that he overheard O'Dwyer give a very friendly greeting to the other security guard, following which he remarked in jest that she never talked to him like that. Brayboy states that O'Dwyer then called him a "nobody" and uttered racially derogatory remarks about him under her breath (Brayboy Dep. 20-21). O'Dwyer, on the other hand, claims that Brayboy had been sexually harassing her not only on that day, but the day before, and for some months before that (O'Dwyer Dep. 18, 22-23, 25, 27-37, 42, 48-49). She became very upset and, on the morning December 9th, told Ms. Parrarra, the union representative, and Officer Reid, who worked at the school, what had happened (O'Dwyer Dep. 18-19). It is undisputed that on the following day O'Dwyer met with Defendant Pannozzo, the Executive Director of Human Resources, who was accompanied by Ms. Carroll, the Assistant Superintendent for the Columbus School, regarding Brayboy's alleged misconduct and, at the urging of Pannozzo, reported the incident to the police (O'Dwyer Dep. 43-44; Pannozzo Dep. 15-16). O'Dwyer then provided the police with her statement as to what had transpired (O'Dwyer Dep. 44-45).

On December 9th, Brayboy was informed by the Sexual Harassment Officer at Columbus

School, Jose Melo, that O'Dwyer had filed a sexual harassment complaint against him (Brayboy Dep. 29).  Melo gave him a form to complete, but after calling his union, Brayboy refused to sign anything and tore up the form (Brayboy Dep. 29).  Brayboy's supervisor, Mel Wearing, then told him to leave the building (Brayboy Dep. 29).  Brayboy was placed on administrative leave with pay while O'Dwyer's allegations of sexual harassment were investigated.

Later that day, Brayboy prepared a written memorandum about O'Dwyer's racial slurs, which memorandum was directed to Wearing, his supervisor and the Director of School Security, with a copy to Larry Osborne, the Director of Labor Relations for the City of Bridgeport (Brayboy Dep. 20-21; Pannozzo Dep. 80-81).  It is undisputed that Brayboy never gave Pannozzo a copy of his statement and that he has no personal knowledge whether she ever received his memorandum around this time period (Brayboy Dep. 68-72).  He was of the opinion the union would take care of everything (Brayboy Dep. 71).

Pannozzo testified that she never received a copy of this memorandum from Brayboy, Wearing or Osborne and that she did not find out about Brayboy's allegations until he filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") in the spring of 2011, naming her as a respondent (Pannozzo Dep. 78-81).  After being named in the CCHRO complaint, Pannozzo was relieved of all of her responsibilities in connection with the investigation of O'Dwyer's complaint (Pannozzo Dep. 80-81).

According to Brayboy, his complaint against O'Dwyer was never investigated in any way by the City of Bridgeport.

On or about May 12, 2011, Brayboy learned that the Bridgeport Police Department had completed its investigation and found no criminal misconduct on his part.

Apparently, Brayboy was reinstated at the end of 2011 and assigned to another school, the Classical Studies Academy.

Pannozzo's last day of employment with the Bridgeport Board of Education was February 3, 2012 (Pannozzo Dep. 5).

On December 4, 2012, Brayboy was informed by the Board of Education that he was being placed on a paid leave of absence, as it had come to their attention that he did not meet the current state requirements for a security guard in that he did not have the necessary certification (Defs.' Ex. 13). He was provided with an opportunity to provide the Board with written verification that he had obtained the necessary certification (Defs.' Ex. 13). Brayboy responded by letter dated December 11, 2012, that he was resigning effective December 12, 2012 (Defs.' Ex. 14).

## Discussion

### Counts I & II - 42 U.S.C. §§ 1981, 1983 - Race Discrimination & Retaliation vs. Board of Education

In Count I, Plaintiff alleges that the Board of Education engaged in racial discrimination against Brayboy by failing to investigate his complaint against O'Dwyer, yet investigating her complaint of sexual harassment against him, and placing Brayboy on administrative leave during this investigation. In Count II, Plaintiff alleges that the Board retaliated against Brayboy by requiring a guard certification from him after 26 years of employment, thereby causing the termination of his employment, and by refusing to investigate his claims of racial discrimination and his response to the allegations of sexual harassment.

The Board of Education has moved for summary judgment on both counts "based upon a

complete failure of the Plaintiff to allege any 'municipal custom policy or practice.'" (Defs.' Mem. at 9).  Plaintiff has not responded to this argument.

In *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004), the Second Circuit held that "when the defendant sued for discrimination under § 1981 or § 1983 is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."  The plaintiff need not identify an express rule or regulation.  Rather, it is sufficient to show that a discriminatory practice of municipal officials was so widespread or persistent as to constitute a custom or usage with the force of law or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials.  *Id.*  Liability, however, cannot be premised on a theory of *respondeat superior*. *Id.*  Thus, in *Patterson*, where the record was bereft of any evidence of a departmental policy or custom of tolerating racial harassment and where the plaintiff had failed to report the alleged racially offensive comments to those in charge, the Court found that the defendant county was entitled to summary judgment. *Id.* at 228.

Similarly, in this case, not only has Plaintiff not alleged a custom, policy or practice of the Board of Education's failing to investigate claims of racial harassment but Plaintiff has also failed to provide even a scintilla of evidence to support such a claim.  Likewise, with Plaintiff's retaliation claim, Plaintiff has failed to provide any evidence to support the existence of a municipal custom, policy or practice of retaliation on the part of the Board.  Accordingly, the Court grants summary judgment in favor of the Bridgeport Board of Education on Counts I and II of Plaintiff's complaint.

II.  Counts III & IV- 42 U.S.C. § 1981 - Race Discrimination & Retaliation vs. Pannozzo[2]

In Counts III and IV, Plaintiff alleges that Pannozzo engaged in racial discrimination and retaliated against Brayboy by failing and refusing to investigate Brayboy's claim of racial discrimination while simultaneously investigating O'Dwyer claim of sexual harassment against Plaintiff.  However, the evidence is undisputed that Pannozzo was not aware of Brayboy's December 9, 2010, memorandum concerning the alleged racial harassment until he filed a charge with the CCHRO in the spring of 2011, naming her as a respondent.  At that point, she was immediately removed from the investigation of O'Dwyer's complaint.

Pannozzo could not have discriminated against Brayboy by failing to investigate a complaint of which she had no knowledge nor could she have retaliated against him if she was not aware of his protected activity.  *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (holding that to establish a claim under § 1981, a plaintiff must establish, *inter alia*, defendant's intent to discriminate on the basis of race), *cert. denied*, 534 U.S. 816 (2001); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (holding that one element that a plaintiff must show to establish a claim of retaliation is that the defendant was aware of the protected activity).

Plaintiff argues that, for purposes of a retaliation claim, a plaintiff is not required to show knowledge on the part of any specific agent of the employer.  Rather, Plaintiff asserts that general corporate knowledge is adequate.  Plaintiff relies on the case of *Gordon v. New York City Board of Education*, 232 F.3d 111, 116 (2d Cir. 2000).  However, in that case the defendant was

---

[2] Plaintiff's complaint does not indicate whether Defendant Pannozzo is sued in her individual or official capacity or both.

9

a board of education. In this case, Plaintiff has asserted this claim against an individual, Pannozzo. In order to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action. . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." *Patterson,* 375 F.3d at 229 *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). This Plaintiff has failed to do.

Additionally, with respect to Plaintiff's retaliation claim in Count IV, the Second Circuit has held that a failure to investigate a complaint cannot be considered an adverse employment action taken in retaliation for the filing of that same complaint. This is precisely what Plaintiff has alleged in this case. *Fincher*, 604 F.3d at 722 n. 8.

Therefore, the Court finds that Pannozzo is entitled to summary judgment on Counts III and IV of Plaintiff's complaint.

III. Count V - Negligent Infliction of Emotional Distress vs. Pannozzo

Plaintiff's fifth count is a state-law claim for negligent infliction of emotional distress against Pannozzo in her individual capacity. It is well-settled law in Connecticut that, in the employment context, a plaintiff may assert a negligent infliction of emotional distress claim based only upon unreasonable conduct of the defendant in the termination process. *See Parsons v. United Technologies Corp.*, 243 Conn. 66, 88 (1997); *Jarell v. Hospital for Special Care*, No. 3:12cv920, 2013 WL 331249, at *3 (D. Conn. Jan. 29, 2013). Since the evidence is undisputed that Pannozzo was no longer employed by the Bridgeport Board of Education for ten months prior to Brayboy's "termination/retirement," and there is not a scintilla of evidence that she had any involvement with his "termination/retirement," the Court holds that she is entitled to

summary judgment on Count V as a matter of law.

IV.  Count VI - Intentional Infliction of Emotional Distress vs. Pannozzo

In Count VI, Plaintiff seeks to hold Pannozzo individually liable for intentional infliction of emotional distress.  In Connecticut, the tort of intentional infliction of emotional distress is limited to conduct that is so extreme and outrageous that it transcends all bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause and does cause mental distress of a very serious kind.  *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000);  *Muniz v. Kravis*, 59 Conn. App. 704, 708 (2000).  In the employment context, the Connecticut Supreme Court has set the bar even higher for what could be considered extreme and outrageous conduct:  "[I]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." *Perodeau v. City of Hartford*, 259 Conn. 729, 757 (2002).  It is the defendant's conduct, not the motive behind the conduct, that must be extreme or outrageous.  *Miner*, 126 F. Supp. 2d at 195.

The Court finds as a matter of law that Plaintiff's claim that Pannozzo failed to investigate Brayboy's complaint, yet investigated O'Dwyer's complaint against him, does not allege sufficiently extreme and outrageous conduct to support a claim for intentional infliction of emotional distress.  *See Id.* at 196.  Therefore, the Court finds that Pannozzo is entitled to summary judgment on Count VI.

V.  Count VII - Negligent Infliction of Emotional Distress vs. O'Dwyer

Plaintiff's seventh count is asserted against O'Dwyer for negligent infliction of emotional distress.  Since there are no facts (or even allegations) that O'Dwyer had any involvement or

connection to Plaintiff's "termination/retirement," the Court holds that she is entitled to summary judgment as to Count VII.  *See* Discussion in part III, *supra.*

VI.  Count VIII - Conn. Gen. Stat. § 46a-60 & Count X - Title VII - Race Discrimination vs. Bridgeport Board of Education

The eighth count of Plaintiff's complaint asserts a claim against the Bridgeport Board of Education for race discrimination under Connecticut's Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60.  Plaintiff alleges that the Board failed and refused to investigate Brayboy's complaint of discrimination while investigating the complaint of O'Dwyer.  The tenth count asserts the same claim but under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  Connecticut courts apply the same burden-shifting analysis to cases brought under Connecticut's Fair Employment Practices Act, as do the federal courts in Title VII cases. *See Feliciano v. Autozone, Inc.*, 142 Conn. App. 756, 769-70, *cert. granted on other grounds*, 310 Conn. 908 (2013). To establish a claim of racial discrimination, a plaintiff must show that (1) he belonged to a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

The Board has moved for summary judgment on the ground that Brayboy, who was on paid administrative leave, did not suffer an adverse employment action during the period when the alleged discrimination occurred, December 2010 to May 2011.  Plaintiff counters that Brayboy suffered damages in the form of a loss of overtime pay, which constitutes an adverse employment action.

In *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006), *cert. denied*, 549 U.S. 1282 (2007), the Second Circuit joined the majority of other circuits in holding that "administrative leave with pay during the pendency of an investigation does not, *without more*, constitute an adverse employment action." (Emphasis added).  While the Second Circuit has recognized that there may be circumstances where an employer exceeds reasonable disciplinary procedures and thereby changed the terms and conditions of employment in connection with a paid suspension, *id.* at 92, n.1, in this case, Plaintiff has proffered no evidence that any additional adverse employment actions were taken against Brayboy.  Indeed in *Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012), the Second Circuit rejected the very argument advanced by Plaintiff in this case.  There, the plaintiff argued that his loss of overtime pay should be sufficient to "clear the bar set by *Joseph*."  *Id.*.  The Court held that the plaintiff's "loss of overtime pay was a direct *result* of his suspension with pay, not an additional action taken by his employer. . . . It would be absurd if the rule in *Joseph* turned on whether a plaintiff has in the past earned overtime pay." *Id.* (emphasis in original).  Accordingly, the Court holds that Plaintiff has not established -  and cannot establish - that Brayboy suffered an adverse employment action and, therefore, Plaintiff cannot make out a prima facie case of race discrimination under either Connecticut's Fair Employment Practices Act or Title VII.  Summary judgment is accordingly granted in favor of the Board on Counts VIII and X.

<u>VII.  Count IX - Conn. Gen. Stat. § 46a-60 & Count XI - Title VII - Retaliation vs. Bridgeport Board of Education</u>

Counts IX and XI asserts claims of retaliation against the Board of Education based upon its requiring Brayboy to obtain a guard certification, which he had not been required to have for

26 years; by refusing to place Brayboy in another position while he sought to obtain this certification; and by causing the termination of his employment.

Title VII, 42 U.S.C. § 2000e-3, prohibits employers from taking adverse action against employees who have opposed a discriminatory employment practice. *See also* Conn. Gen. Stat. § 46a-60(4). To state a prima facie case of retaliation, a plaintiff must show that the employee engaged in protected activity, that the employer was aware of that activity, that the employee suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse employment action. *Reed v. Connecticut Dep't of Transp.*, 161 F. Supp. 2d 73, 83 (D. Conn. 2001). With respect to the fourth element of the prima facie case, an employee may demonstrate proof of a causal connection between the protected activity and the employment decision "*indirectly* by showing that the protected activity was followed *closely* by discriminatory treatment, or through evidence such as disparate treatment of fellow employees engaged in similar conduct, . . . ,or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester County Med. Ctr,* 821 F.2d 111, 115 (2d Cir.) (internal citations omitted) (emphasis added), *cert. denied*, 484 U.S. 965 (1987). Some courts have held that a substantial time lapse between an employee's protected activity and the adverse employment action is counter-evidence of any causal connection between the two for purposes of a retaliatory action. *See, e.g., Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995) (concluding that a twenty-month gap between the protected activity and adverse employment decision discounted evidence of causal connection).

In this case, Plaintiff has offered no evidence of a causal connection between Brayboy's complaint of racial harassment in December 2010 and his "termination/retirement" in December

2012, two years later. *See also Hollander v. American Cyanamid Co.,* 895 F.2d 80, 84–85 (2d Cir.1990) (affirming summary judgment for employer based on lack of causal connection where three months separated complaint and adverse action). Moreover, Plaintiff has not shown "disparate treatment of fellow employees engaged in similar conduct," or "evidence of retaliatory animus directed against [him] by the [Board]." *See DeCintio*, 821 F.2d at 115.

To the extent Plaintiff is relying on Brayboy's filing of a CCHRO complaint in March 2011, again there is absolutely no evidence causally linking this complaint to the requirement that he have the state-mandated guard certification and his ultimate "retirement." *See* Conn. Gen. Stat. § 29-161q. Further, the lapse of 21 months between the filing of this charge and his "termination/retirement" weighs against an inference of any causal connection.

Moreover, even if Plaintiff were able to establish a prima facie case of retaliation, the Board has proffered a legitimate reason for its action - that the certification was required by state law. No evidence has been offered as to why this requirement was not enforced earlier.[3] By the same token, there is no evidence that Brayboy was in any way singled out. There is simply no evidence of a retaliatory motive.

Lastly, based on the record before the Court on summary judgment, Brayboy's letter dated December 11, 2012, stated unequivocally that he chose to retire effective December 12, 2012 (Defs.' Ex. 14). There is no evidence that he was constructively discharged or suffered any other adverse employment action as a result of his filing the CCHRO complaint. Plaintiff did not

---

[3] This statute was enacted in 2004. P.A. 04-192, § 32 as Conn. Gen. Stat. § 29-161q. The statute provides in relevant part that "[n]o person hired or otherwise engaged to perform work as a security officer, as defined in section 29-152u, shall perform the duties of a security officer prior to being licensed as a security officer by the Commissioner or Emergency Services and Public Protection." Conn. Gen. Stat. § 29-161q(b).

testify as to the reasons for his retirement, as his deposition was taken in March of 2012, nine months before this alleged "termination." No other evidence has been offered by Plaintiff.

Accordingly, the Count concludes that the Board is entitled to summary judgment on Counts IX and XI of Plaintiff's complaint.

## Conclusion

For the reasons discussed above, the Court grants summary judgment in favor of Defendants as to all counts of Plaintiff's complaint. This is not a Recommended Ruling. The parties have voluntarily consented to have this case transferred to a Magistrate Judge for all purposes including the entry of a final judgment [Doc. # 69].

The Clerk is directed to enter a final judgment in this case in favor of the Defendants and to close this case. Jury selection and the jury trial of this case is hereby cancelled.

SO ORDERED, this   21st   day of May, 2014, at Bridgeport, Connecticut.


 /s/ *William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge